IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                  :
DANA KRYSZTOFIAK
                                  :

     v.                           :     Civil Action No. DKC 19-0879

                                  :
BOSTON MUTUAL LIFE
INSURANCE CO.                     :

                         **MEMORANDUM OPINION**

     Presently pending and ready for resolution in this case brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, alleging the wrongful termination and denial of disability benefits, are the motion for summary judgment filed by Plaintiff Dana Krysztofiak, (ECF No. 15) and the cross motion for summary judgment filed by Defendant Boston Mutual Life Insurance Co. (ECF No. 17). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for summary judgment will be granted and Defendant's cross motion for summary judgment will be denied.

**I.   Background**

     Dana Kysztofiak ("Ms. Krysztofiak" or "Plaintiff") is a registered nurse. Before the events of this case, she worked as a Clinical Coordination Manager for HomeCare Maryland, LLC. In late 2016, Ms. Kyrsztofiak stopped working due to, among other

things, diagnoses of psoriatic arthritis and fibromyalgia. (ECF No. 11-19, at 103). Ms. Krysztofiak first claimed disability benefits under a Boston Mutual Life Insurance Co. ("Boston Mutual" or "Defendant) Long Term Disability policy ("the Policy") as of December 29, 2016. *Id*. About four months later, on April 13, 2017, Boston Mutual began paying Ms. Krysztofiak regular disability benefits of $4,377.50 per month. (ECF No. 1, at 2).

In the spring of 2018, Boston Mutual's claims administrator, Disability Reinsurance Management Services, Inc. ("DRMS"), determined that Ms. Krysztofiak was no longer disabled. (ECF No. 11-20, at 54). Her disability income benefits were terminated as of May 29, 2018. Her administrative appeal was denied on March 20, 2019, and this case was filed on March 25, 2019. Plaintiff seeks a declaration that she is entitled to the payment of disability income benefits, a reinstatement of benefits going forward so long as she remains disabled, an award of benefits accrued since termination, prejudgment interest, costs, and attorneys' fees.

Just before benefits were terminated, Ms. Krysztofiak's treating physician, Dr. Tazeen Rehman, concluded that psoriatic arthritis was no longer the cause of Ms. Krysztofiak's disability. Her report is dated May 18, 2018, and she reports that Plaintiff recently has been on Cimzia which results in "good control" of the psoriatic arthritis. (ECF No. 11-1, at 34). Dr. Rehman concluded

2

instead that "[h]er limitations are due to fibromyalgia." (*Id*.). The denial letter recounts some of Plaintiff's history concerning treatment for psoriatic arthritis during 2017 and early 2018. (ECF No. 11-20 at 54-57). Defendant argues that, once Plaintiff's psoriatic arthritis was under control, she ceased meeting the definition of disability based on fibromyalgia alone. (ECF No. 17-1, at 8).

The administrative record is replete with descriptions and analyses of Ms. Krysztofiak's fibromyalgia, but the most thorough are in her own words in an affidavit executed in December 2018:

> I experience constant generalized pain, swelling, and stiffness throughout my entire body. The severity of pain ranges from moderate to excruciating. On a 1-10 scale, my pain averages 6-7 on a daily basis. The pain is deep, penetrating, throbbing, and stabbing. It feels like bones are breaking. The pain is exacerbated by anything that touches me, or any kind of bodily movement, including sitting down, standing up, walking, reaching, bending, and turning. When pain levels become unbearable, I need to lie down until the pain subsides. When walking, I use a cane or walker. The pain is often distracting to the point that it impairs my ability to focus on anything other than the pain. The pain often keeps me up at night when I am trying to sleep. I have panic attacks and anxiety because the pain never stops.

(ECF No. 11-19, at 153).

In order to assess Ms. Krysztofiak's condition as part of the review process, DRMS had her participate in a functional capacity

evaluation ("FCE") on October 2, 2017.[1] (ECF No. 11-5, at 21). During the FCE, Ms. Krysztofiak "refused Floor to Waist and Waist to Shoulder lifts, and carry task" and "refused to try filing, typing and assembly tasks." *Id*. The FCE administrator was careful to note that "[t]he results of this evaluation were limited," "should be considered to be a minimal representation of her functional ability," and that the evaluation was "unable to determine her physical demand level[,]" because "[d]uring various components of the evaluation, claimant demonstrated lack of effort[.]" (*Id*. at 21, 22).

Seemingly at odds with those caveats, however, the FCE states that "[b]ased on the results of this evaluation, claimant would not be able to perform the job functions of Clinical Coordinator Manager, due to claimant not being able to perform frequent fingering, modifications required with walking, sitting limitations, and not being able to demonstrate productive functional reach pattern." (*Id*. at 21). The FCE also noted that Ms. Krysztofiak was "consistent throughout both days of the evaluation[,]" and that she needed "positional changes on both

---

[1] The medical records are unclear about the status of Plaintiff's psoriatic arthritis at this point. While there is apparent agreement that that condition was under control by May 2018, there is no clear indication exactly when the treatment became effective.

4

days (sit to supine), which would make it difficult for claimant to perform modified or light duty work." (*Id*. at 21, 22).

Because of the equivocal results of the FCE, Boston Mutual arranged for an in-person examination with Dr. John Parkerson on February 13, 2018. (ECF No. 11-1, at 23). In relevant part, Dr. Parkerson's report concluded:

> On a physical basis, she does not present as having any physical limitations or restrictions. Her reported limitations present as psychological or based on fibromyalgia. . . Fibromyalgia is a condition defined only by subjective complaints. The person must report pain and symptoms of severity. There is no objective test known or physical finding required. The diagnosis is made simply on the person's complaints. Therefore, there is no objective finding of limitation or restriction based on this diagnosis. The diagnosis also requires the exclusion of other reasonable causes of the complaints. In this particular case, she has other diagnoses that reasonably explain her complaints including but possibly not limited to her bipolar depressive disorder, endocrinopathy, and opioid dependence. A diagnosis of fibromyalgia does not present her with any physical limitations or restrictions.

(*Id*., at 28-29). Dr. Parkerson also concluded that Ms. Krysztofiak did not exhibit any "symptom magnification disorder[.]" In other words, Dr. Parkerson thought she was truthful about the severity of her symptoms. (*Id*. at 27).

Unlike Dr. Parkerson, Ms. Krysztofiak's doctors did diagnose her with fibromyalgia. On February 10, 2017, Pamela Lentz, CRNP, found "18 out of 18 tender points," a common test for fibromyalgia.

(ECF No. 11-9, at 25). Dr. Rehman likewise concluded that Ms. Krysztofiak "suffers from fibromyalgia which severely limits her activities of daily living[,]" (ECF No. 11-10, at 74), and that her "limitations are mainly due to fibromyalgia," (ECF No. 11-19, at 128).

Following Dr. Parkerson's report, DRMS had Stewart Russell, D.O., review all of Ms. Krysztofiak's medical records. Dr. Russell concluded that "the insured likely has fibromyalgia[.]" (*Id.*, at 110). Dr. Russell nonetheless found "no support for an inability to perform at least a minimum of full-time sedentary activity[,]" and that "self-reports of the insured are not consistent with the overall medical information." (*Id.*). Dr. Russell also disagreed with the treatment Ms. Krysztofiak was then undergoing, noting that the opioids she had been prescribed were inappropriate for a fibromyalgia patient. (ECF No. 11-20, at 105).

The course of opioid treatment which Dr. Russell took issue with had been ongoing since June 2014. (ECF No. 11-6, at 54). In that year, Ms. Krysztofiak began seeing Dr. Norman Rosen for pain treatment related to a number of ailments. On June 30, 2017, the Maryland Board of Physicians reprimanded Dr. Rosen for over-prescription of opioids. (ECF No. 11-20, at 52). According to media reports, on February 27, 2018, federal agents raided Dr. Rosen's clinic as part of an ongoing investigation. (ECF No. 11-1, at 106). By July of 2018, Plaintiff reported to Dr. Rehman

6

that she had weaned herself from opioids and was instead relying on medical marijuana to treat her fibromyalgia, and Plaintiff attested in a December 2018 affidavit submitted as part of her appeal review process that she "no longer use[s] opioid medications." (ECF No. 11-19, at 156).

Dr. Russell's review occurred in March 2019 and includes nothing which refutes Plaintiff's and Dr. Rehman's timeline of Ms. Krysztofiak's opioid use. Rather, Dr. Russell appears to have considered Dr. Rehman's July 2018 report that Ms. Krysztofiak was "off all of her pain medications and is taking medical marijuana which seems to be helping the fibromyalgia symptoms." (*Id.*, at 109). Dr. Russell nonetheless addressed his criticism of Ms. Krysztofiak's treatment specifically and exclusively to her use of opioids for fibromyalgia, writing that "[t]he prescribed opiate medications are inappropriate for that diagnosis[,]" and that "[i]nsured has never been in an appropriate treatment for fibromyalgia[.]" (*Id.* at 112).

## II. Standard of Review

The parties agree that the Policy conferred discretion on Boston Mutual to interpret plan provisions. Accordingly, Boston Mutual's adverse benefits decision is reviewed under an abuse of discretion standard. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010). Under that standard, the reviewing court will set aside the administrator's decision only if it is

not reasonable. *See Stup v. Unum Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004). "The administrator's decision is reasonable 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *DuPerry v. Life Ins. Co. of North Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Clarke v. Unum Life Ins. Co. of Am.*, 852 F.Supp.2d 663, 677 (D.Md. 2012) (citing *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984)).

The United States Court of Appeals for the Fourth Circuit has set out a list of non-exclusive factors for determining the reasonableness of a plan administrator's decision. *See Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000). The factors amount to a common-sense "totality of the circumstances" review and do not bear repeating. Recognizing this, the parties only expressly address one of the factors: the fiduciary's motives and any conflict of interest it may have. *Id*. at 342-43. Specifically, the Supreme Court has noted that when a plan administrator is responsible for both evaluating and paying claims, that conflict is "but one factor among many that a reviewing judge must take into account." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008).

**III. Analysis**

According to the Policy:

Disability means that due to sickness or injury:

- You are not able to perform one or more duties (with reasonable continuity) or each and every duty of your regular occupation and you have at least a 20% loss in your pre-disability earnings.

OR

- While you are not able to perform one or more duties (with reasonable continuity) or each and every duty of your regular occupation, you are working in any occupation and have at least a 20% loss in your pre-disability earnings.

(ECF No. 11-15, at 80). Payments beyond 24 months are provided only if the person is not able to perform each and every duty of any gainful occupation or, while not able to perform one of more duties or each and every duty of the person's regular occupation, the person is working in any occupation and has at least a 20% loss in pre-disability earnings.[2] The Policy also requires that the insured be under "Regular Care" which means she is seeing a doctor and receiving "appropriate treatment." (*Id*. at 83).

In support of its motion for summary judgment, Boston Mutual argues that the FCE, Dr. Parkerson's report, and Dr. Russell's report each constitute "substantial evidence" in and of themselves, (ECF No. 17-1, at 8-10), and that Ms. Krysztofiak's

---

[2] Plaintiff's benefits were terminated during the initial 24 month period. She contends that she remains disabled, presumably under the "any gainful occupation" standard.

failure to provide "objective evidence" of her claimed limitations means that she has not met her burden for demonstrating a disability. (*Id*. at 12-14). Plaintiff, on the other hand, argues that Boston Mutual's decision was *not* based on substantial evidence, not sufficiently reasoned or deliberate, inconsistent with Boston Mutual's earlier decision to grant disability benefits, and the result of a conflict of interest. (ECF No. 16, at 16-25).

Throughout both its briefing and the Administrative Record, Defendant returns again and again to its most pointed refrain: because Ms. Krysztofiak cannot provide "objective" evidence of the disabling effects of her fibromyalgia, Defendant did not abuse its discretion by denying her benefits. As will be seen, Defendant has misinterpreted the law of this circuit and operated – seemingly at each stage of its review of Ms. Krysztofiak's claim – under the mistaken assumption that "objective evidence" of a disability is a hard and fast requirement.

In Dr. Parkerson's report, he emphasized the "subjective" nature of a fibromyalgia diagnosis. He writes that "there is no objective finding of limitation or restriction based on this diagnosis [of fibromyalgia]." (ECF No. 11-1, at 28-29). While Dr. Parkerson does note that "diagnosis [of fibromyalgia] also requires the exclusion of other reasonable causes of the complaints," the clear import of the sentence "[a] diagnosis of

fibromyalgia does not present her with any physical limitations or restrictions[,]" is that fibromyalgia *cannot*, in his mind, be disabling within the meaning of the Policy. (*Id.*).

In his report, Dr. Russell goes so far as to concede that Ms. Krysztofiak does indeed suffer from fibromyalgia. (ECF No. 11-19, at 110). Yet he goes on to repeat Dr. Parkerson's mistake, writing that Ms. Krysztofiak's "fibromyalgia complaints are based solely on her subjective symptoms," and that "[a]s the insured's rheumatologist explains, there are no definitive signs, lab tests, or imaging studies that can prove a diagnosis of fibromyalgia. The diagnosis is based on subjective symptoms only." (*Id.*). Finally, Dr. Russell concludes that "[s]ince fibromyalgia is not a condition that demonstrates destruction of any tissue in the body, there is no support for an inability to perform at least a minimum of full-time sedentary activity." (*Id.*). Again, the clear import of Dr. Russell's report is that fibromyalgia alone *cannot, under any circumstances*, be disabling within the meaning of the Policy.

The reasoning of Drs. Parkerson and Russell is almost identical to the reasoning that the Fourth Circuit found unreasonable in *DuPerry*, 632 F.3d at 872-73. There, the insured likewise suffered from fibromyalgia, and the doctors who reviewed

11

the insured's claim made note of "the absence of physical limitations due to [fibromyalgia.]" *Id*.

The court in *DuPerry* interpreted that analysis to have two possible meanings: 1) that the insured "did not produce the *type* of evidence that would show pain and fatigue caused by her fibromyalgia and other conditions was so substantial that she could not perform the material duties of her job," or 2) that the doctors were "not persuaded that [the insured] was rendered unable to work by the pain and fatigue she experienced from fibromyalgia." (*Id.*). The court rejected the first ground because "the Policy contained no provision precluding DuPerry from relying on her subjective complaints as part of her evidence of disability." (*Id.*). Defendant argues that *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 276 (4th Cir. 2002), is the controlling case on this issue, and that it requires "objective" evidence of disability. (ECF No. 19, at 1-2).

Defendant has misread *Gallagher*. That case, in which *de novo* review was applicable, requires plaintiffs to submit "objectively satisfactory" evidence of disability. If review were under the lesser abuse of discretion standard, the proof required would be such that the insurance company found subjectively satisfactory. *Gallagher*, 305 F.3d at 276. "Objectively satisfactory" evidence and "objective evidence" are not the same thing. The very

acceptance of fibromyalgia by the medical community illustrates this point. As described by the Fourth Circuit:

> Fibromyalgia is a rheumatic disease with . . . symptoms, including "significant pain and fatigue," tenderness, stiffness of joints, and disturbed sleep. Nat'l Institutes of Health, *Questions & Answers About Fibromyalgia* 1 (rev. June 2004), http:// www.niams.nih.gov/hi/ topics/fibromyalgia/Fibromyalgia.pdf. *See also Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 231 n. 1 (4th Cir.1997)(quoting Taber's Cyclopedic Medical Dictionary (16th ed.1989)); *Sarchet v. Chater,* 78 F.3d 305, 306-07 (7th Cir.1996). Doctors diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard trigger points on the body. *Sarchet,* 78 F.3d at 306. "People with rheumatoid arthritis and other autoimmune diseases, such as lupus, are particularly likely to develop fibromyalgia." Nat'l Institutes of Health, *supra,* at 4. Fibromyalgia "can interfere with a person's ability to carry on daily activities." *Id.* at 1. "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not." *Sarchet,* 78 F.3d at 307(citations omitted).

*Stup*, 390 F.3d at 303 (4th Cir. 2004).[3]

Put simply, no "objective evidence" exists to prove that the rheumatic disease known as fibromyalgia exists. Yet the *subjective* complaints of fibromyalgia sufferers are sufficiently consistent and numerous to provide the medical community with "objectively

---

[3] For a more thorough analysis of the debate over the existence and acceptance of fibromyalgia, see *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017) (collecting sources), which notes that "[t]here used to be considerable skepticism that fibromyalgia was a real disease. No more."

13

satisfactory" evidence that fibromyalgia is very real. On the individual level: a patient will never be able to prove through objective evidence that she has fibromyalgia, but the subjective responses to tests – specifically the "tender points" test – may be "objectively satisfactory" to physicians seeking to diagnose fibromyalgia.

The *DuPerry* court noted that the insured "produced the only types of evidence a claimant in her situation could produce, her own description of her subjective symptoms, videos showing how she moved in her condition, and her treating physicians' opinion that the pain and fatigue rendered her unable to work." *DuPerry*, 632 F.3d at 873. Ms. Krysztofiak has done the same. Defendant argues that "[n]either Boston Mutual nor the doctors supporting the denial based their opinions" on the generalization "that patients with fibromyalgia can work sedentary jobs." (ECF No. 17-1, at 12). Dr. Parkerson's and Dr. Russell's reports may not say exactly that, but they come close. Both doctors suggest that the lack of physical, objective markers like "destruction of any tissue in the body" means that Ms. Krysztofiak can work a sedentary job.

Even reading Dr. Parkerson's and Dr. Russell's reports generously, they are still problematic. Judge Richard Posner of the United States Court of Appeals for Seventh Circuit, dealing with a similar fibromyalgia case, illustrates the point well:

> The gravest problem with [the doctor's] report is the weight he places on the difference between subjective and objective evidence of pain. Pain often and in the case of fibromyalgia cannot be detected by laboratory tests. The disease itself can be diagnosed more or less objectively by the 18-point test (although a canny patient could pretend to be feeling pain when palpated in the 18 locations—but remember that the accuracy of the diagnosis of Hawkin's fibromyalgia is not questioned), but the amount of pain and fatigue that a particular case of it produces cannot be. It is 'subjective' — and [the doctor] seems to believe, erroneously because it would mean that fibromyalgia could never be shown to be totally disabling, which the plan does not argue, that because it is subjective Hawkins is not disabled.

*Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). Numerous courts outside of this circuit have agreed with Judge Posner's reasoning in *Hawkins* as it relates to fibromyalgia: *i.e.*, they have rejected the view that because fibromyalgia is subjective, it cannot be disabling. *See Solomon v. Metro. Life Ins. Co.*, 628 F.Supp.2d 519 (S.D.N.Y. 2009); *Minton v. Deloitte and Touche USA LLP Plan*, 631 F.Supp.2d 1213 (N.D. Cal. 2009); *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F.Supp.2d 261, 296 (W.D.Pa. 2008); *Payzant v. UNUM Life Ins. Co. of Am.*, 402 F.Supp.2d 1053, 1065 (D.Minn. 2005).

This leaves only the FCE as the remaining possible "substantial evidence" that Ms. Krysztofiak is not disabled. That FCE says that "[b]ased on the results of this evaluation, claimant would not be able to perform the job functions of Clinical

Coordinator Manager, due to claimant not being able to perform frequent fingering, modifications required with walking, sitting limitations, and not being able to demonstrate productive functional reach pattern." (ECF No. 11-5, at 21). The FCE also noted that Ms. Krysztofiak was "consistent throughout both days of the evaluation[,]" and that she needed "positional changes on both days (sit to supine), which would make it difficult for claimant to perform modified or light duty work." (*Id.* at 21, 22).

It is unclear how Defendant could read the above statements and argue in good faith that "it was reasonable for the defendant to rely on the FCE to conclude that claimant was not disabled." (ECF No. 17-1, at 9). Defendant claims to have done so "based on the overall testing," by arguing that discrepancies in grip strength between the FCE and Dr. Parkerson's report prove that Ms. Krysztofiak was lying about the disabling nature of her fibromyalgia. (*Id.*). This argument does not pass muster. Defendant relies on two cases from the United States Court of Appeals for the Eighth Circuit to suggest that "courts have found than an FCE is especially useful in claims involving fibromyalgia." *Id.* Neither of those cases – *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006) and *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971 (8th Cir. 2003) – say any such thing. In both cases, insurers used tests like the FCE to determine ineligibility for disability benefits in fibromyalgia cases, which the courts

16

considered – along with other evidence – to constitute "substantial evidence" of the administrator's reasoned, principled conclusion to deny benefits. This is not the same as suggesting that "an FCE is *especially useful* in claims involving fibromyalgia."

In fact, the exact opposite may instead be true. See, for example, *Lamanna*, 546 F.Supp.2d at 296, which held that:

> tests of strength such as a function capacity evaluation ('FCE') can neither prove nor disprove claims of disabling pain, nor do they necessarily present a true picture in cases involving fibromyalgia where the symptoms are known to wax and wane, thereby causing test results potentially to be unrealistic measures of a person's ability to work on a regular, long-term basis.

*See also*, *Brown v. Cont'l Cas. Co.*, 348 F.Supp.2d 358, 367–368 (E.D.Pa.2004); *Dorsey v. Provident Life & Accident Ins. Co.*, 167 F.Supp.2d 846, 856 (E.D.Pa.2001) ("an FCE is a highly questionable tool for determining whether a fibromyalgia patient is disabled.")

Defendant has misconstrued its cited cases and ignored other cases regarding the utility of FCEs for fibromyalgia disability diagnoses. Defendant has done so in an effort to malign Ms. Krysztofiak as a malingerer – to suggest she lacks "credibility." (ECF No. 17—1, at 9). All this despite Dr. Parkerson's finding that Ms. Krysztofiak did not exhibit any "symptom magnification disorder." (ECF No. 11-1, at 27).

Defendant's final argument, although not entirely fleshed out, appears to be that because Ms. Krysztofiak had received

17

inappropriate treatment in the form of opioids, she did not qualify for disability benefits. (*Id.*, at 6). The letter from DRMS denying Ms. Krysztofiak's appeal, however, does not base denial on inappropriate treatment. Instead, denial is based on the fact that the administrator believed Ms. Krysztofiak could in fact perform the duties of a Clinical Coordination Manager. (ECF No. 11-19, at 95-99). Defendant's counsel – without substantiation or citation to the record – suggests that opioids are "a much more likely source" of Ms. Krysztofiak's "fatigue/cognitive complaints" than her fibromyalgia. (ECF No. 17-1, at 3).

The administrative record suggests that Ms. Krysztofiak was taken advantage of by a pain clinic which Defendant's own doctor, Dr. Russell, characterizes as a "pill mill." (ECF No. 11-19, at 107). It is inappropriate for Defendant's counsel to make their own guesses about what is the more "likely" cause of Ms. Krysztofiak's ailments or to seek to discredit Ms. Krysztofiak's claims of disability based on her opioid use. It is all the more inappropriate given that the record is undisputed that Ms. Krysztofiak had, by the time of her denial of benefits, accomplished the difficult task of weaning herself from opioids.

Finally, while both Plaintiff and Defendant address the conflict of interest Boston Mutual has as both claim administrator and payor, that conflict is not decisive in this case. Because Boston Mutual's denial of disability benefits was neither

supported by substantial evidence, nor the result of a deliberate, principled reasoning process, the decision to deny Ms. Krysztofiak benefits was an abuse of discretion – conflict of interest or no.

**IV. Relief**

It is left to the court's discretion to either award benefits to the claimant or remand the case to the plan administrator. *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 362-63 (4th Cir. 2008). Remand, however, "should be used sparingly," (*id*. at 362), especially where the evidence shows that a plan administrator abused its discretion, *Helton v. AT & T, Inc.*, 709 F.3d 343, 360 (4th Cir. 2013). Ms. Krysztofiak, in her complaint, seeks a judicial declaration of her rights under the Policy, (ECF No. 1, at 3), and neither party has requested – nor even addressed the possibility of – remand. As such, the court will not, at this time, remand this case to the plan administrator, but rather will declare that Ms. Krysztofiak is entitled to payment of certain long-term disability benefits under the policy.

Similarly neglected in the parties' papers is the distinction in the Policy between benefits paid before and after the first 24 months of disability. The former deems an insured eligible for disability benefits based on the insured's ability to perform her "regular occupation," while the latter applies to the ability to perform "any gainful occupation." (ECF No. 11-15, at 80). Ms. Krysztofiak's claim is addressed to the denial of benefits during

the 24-month period.  While that denial constituted an abuse of discretion, the court cannot, at this time and on this record, determine Ms. Krysztofiak's eligibility for benefits beyond the now-lapsed 24-month period.

**V.  Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Plaintiff will be granted and the cross motion for summary judgment filed by Defendant will be denied.  A separate order will follow.

                                                        /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge