IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANA KRYSZTOFIAK                      :

                                      :

    v.                                :   Civil Action No. DKC 19-0879

                                      :

BOSTON MUTUAL LIFE
INSURANCE CO.                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this denial of disability benefits case are the motion for relief consistent with order granting plaintiff's motion for summary judgment and the motion for attorneys' fees filed by Plaintiff Dana Krysztofiak. (ECF Nos. 22, 23).   The issues have been briefed, and the court now rules, no hearing being deemed necessary.   Local Rule 105.6. For   the   following   reasons,   Plaintiff's   motion   for   relief consistent with order will be denied in part and granted in part, and the motion for attorneys' fees will be granted in part, again with modifications.

**I.    Background**

The majority of the background to this case may be found in the court's last memorandum opinion.   In that opinion, the court noted:

> neglected   in   the   parties'   papers   is   the
> distinction   in   the   Policy   between   benefits
> paid before and after the first 24 months of
> disability.    The   former   deems   an   insured

> eligible for disability benefits based on the
> insured's ability to perform her "regular
> occupation," while the latter applies to the
> ability to perform "any gainful occupation."
> (ECF No. 11-15, at 80). Ms. Krysztofiak's
> claim is addressed to the denial of benefits
> during the 24-month period. While that denial
> constituted an abuse of discretion, the court
> cannot, at this time and on this record,
> determine Ms. Krysztofiak's eligibility for
> benefits beyond the now-lapsed 24-month
> period.

*Krysztofiak v. Bos. Mut. Life Ins. Co.*, 424 F.Supp.3d 446, 455 (D.Md. 2019). Plaintiff now argues that "there is sufficient unrefuted evidence in the administrative record to support a judicial determination that Ms. Krysztofiak is disabled under the Policy's 'any occupation' standard of disability. Furthermore, on the record before this Court, remand would be inconsistent with applicable Fourth Circuit case law." (ECF No. 22-1, at 1-2).[1]

## II. Analysis

Plaintiff attempts to fit her self-styled "Motion Consistent with Order Granting Plaintiff's Motion for Summary Judgment" to the Court's December 4, 2019 memorandum opinion. However, there is no plausible way to read Plaintiff's request for benefits under the "any occupation" standard as compatible with the court's opinion and order. The court specifically held that it could not "at this time and on this record, determine Ms. Krysztofiak's

---

[1] If the court disagrees, plaintiff seeks a remand. (ECF No. 22-1, at 10).

eligibility for benefits beyond the now-lapsed 24-month period." *Krysztofiak v. Bos. Mut. Life Ins. Co.*, 424 F. Supp. 3d 446, 455 (D.Md. 2019). The court's order also specifically limited the award to "payment of all long-term disability benefits due *within the first 24 months of Plaintiff's disability* under the Boston Mutual Life Insurance Co. Long Term Disability policy[.]" (ECF No. 21). Nonetheless, Plaintiff devotes a large portion of her motion to a review of the administrative record and a subsequent argument that "Ms. Kysztofiak satisfies the 'any occupation' standard of disability[.]" (ECF No. 22-1, at 2-7). Plaintiff's motion all-but-expressly argues that the court's ruling in its last memorandum opinion was wrongly decided. Under these circumstances, Plaintiff's motion is best understood as one for reconsideration.

Under Fed.R.Civ.P. 54(b), a court may revise a non-final order at any time before entry of a final judgment. Although the restrictive standards for review under Rules 59 and 60 are not binding under Rule 54, courts often look to those standards for guidance. *Vetter v. American Airlines, Inc. Pilot Long-Term Disability Plan*, 2019 WL 398679 *2 (D.Md. January 31, 2019). As Judge Grimm concluded:

> In keeping with these standards, this Court has held that "[a] motion for reconsideration is appropriate to 'correct manifest errors of law or fact or to present newly discovered evidence,' or where there has been an intervening change in controlling law." *Potter* [*v. Potter*], 199 F.R.D. [550 (D.Md. 2001)] at 552 n.1. (citations omitted). It "is not a license for a losing

party's attorney to get a second bite at the apple." *Id.*
at 552-53 (quoting *Shields v. Shetler*, 120 F.R.D. 123,
126 (D.Co. 1988). These "rules of constraint . . . make
sense when a district court is asked to reconsider its
own order" because "'[w]ere it otherwise, then there
would be no conclusion to motions practice, each motion
becoming nothing more than the latest installment in a
potentially endless serial that would exhaust the
resources of the parties and the court—not to mention
its patience.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430,
452-53 (4th Cir. 2005)(quoting *Potter*, 199 F.R.D. at
553).

The court earlier concluded that, despite the absence of
argument from the parties, the record was insufficient to determine
entitlement under the "any occupation standard." Plaintiff argues
that the evidence before the court met the "any occupation"
standard because "there is. . . no practical distinction between
the 'own occupation' and 'any occupation' definitions of
disability," and that remand is an inappropriate remedy. (ECF No.
22-1, at 6-7). There is nothing in the current motion that could
not have been presented earlier, and, in any event, the material
is insufficient to compel entry of a sweeping order as Plaintiff
requests.

Plaintiff's reliance on *Duperry v. Life Ins. Co. of North
Am.*, 632 F.3d 860, 875-76 (4th Cir. 2011), is instructive. The
*DuPerry* court noted that under the circumstances before it, "this
is one of those *rare* cases where a remand to the plan administrator
would serve no purpose." *Id.* (emphasis added). But there, the
express findings of the plaintiff's initial disability

4

determination were that the plaintiff in that case was "permanently disabled." *Id*.   Given the nature of that plaintiff's *permanent* disability, the court found there was a "clear and positive" showing that exhaustion of administrative remedies would be futile.   *Id*. at 875.   Here, absent a finding of *permanent* disability, and given the fact that the Policy sets distinct disability standards, there has not been a clear and positive showing that remand under the "any occupation" standard would be futile.

Furthermore, Plaintiff correctly points out that remand is "most appropriate 'where the plan itself commits the trustees to consider relevant information which they failed to consider[.]'" *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999).   In this case, the record – as described in the court's last memorandum opinion – is replete with evidence that Boston Mutual gathered relevant information throughout their testing of Ms. Krysztofiak and then proceeded to disregard that information on the mistaken assumption "that fibromyalgia alone *cannot, under any circumstances*, be disabling within the meaning of the Policy." *Kyrsztofiak*, 424 F.Supp.3d at 452.   In other words, because this is a case where Defendant failed to consider relevant information, remand is appropriate.

For the foregoing reasons, to the extent that Plaintiff's motion seeks reconsideration of the court's last memorandum

opinion, it will be denied.  The court will decline to determine Plaintiff's entitlement to benefits under the "any occupation" definition of disability and will remand this case to the plan administrator for such determination in accordance with the Court's last memorandum opinion.

Aside from arguing for additional damages under the "any occupation" standard, Plaintiff submits that she is entitled to $45,963.65 in long term disability benefits owed under the "regular occupation" standard which dictated Plaintiff's entitlement to benefits between May 29, 2018 and April 12, 2019. (ECF No. 22-1, at 5).  Defendant disputes this amount and suggests the actual total owed for that period is $45,817.83.  Defendant suggests this "difference is likely related to the number of days used by each party.  According to Boston Mutual, there are ten months and fourteen days of 'regular occupation' benefits remaining." (ECF No. 24, at 5).  Both sides appear to agree on the monthly benefits of $4,377.50, and the *per diem* benefits of $145.91.  However, Plaintiff appears to have added an additional day of benefits, by claiming she is owed ten months and 15 days of benefits, running from May 29, 2018, through April 12, 2019. (ECF No. 22-1, at 4-5).  Plaintiff's benefits were terminated on May 29, 2018, but her termination letter states that "benefits [were] paid to 5/29/2018[.]" (ECF No. 11-20, at 57).  Neither party has addressed the discrepancy adequately, but the court takes the language in

6

the termination letter to mean that benefits were paid *through* May 29, 2018. Therefore, the calculation of benefits still owed to Plaintiff should begin on May 30, 2018, not May 29, 2018. She is thus owed ten months of benefits, plus *per diem* benefits for May 30, 2018, May 31, 2018, and the first 12 days of April 2019 – that is, 14 days. This amounts to an award of $45,817.74: $43,775.00 in monthly benefits, plus 14 days of *per diem* benefits amounting to $2,042.74 ($145.91 x 14). Defendant's number is $.09 higher, at $45,817.83. Without any guidance as to Defendant's methodology for calculating this amount, however, the court is left to guess that it is in error. As such, Plaintiff will be awarded $45,817.74.

The parties also dispute the amount of pre-judgment interest owed. Plaintiff suggests a rate of 6% while defendant argues for 3%. Neither party has adequately briefed the issue: Plaintiff makes the conclusory statement that 6% is the "legal rate" of pre-judgment interest, (ECF No. 22-1, at 10), while Defendant relies on a single, unreported decision to suggest that 6% is unreasonable and that 3% *is* reasonable. ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate, the award of pre-judgment interest is discretionary with the trial court. *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988), *cert. denied*, 490 U.S. 1089 (1989). The rate of pre-judgment interest for cases involving federal questions is a matter left to

the discretion of the district court. *United States v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 940 (4th Cir. 1983) (citing *E.E.O.C. v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1074 (4th Cir.1982)).

Although discretionary, there is a presumption in ERISA cases in favor of awarding prejudgment interest. *See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 823 F.Supp.2d 307, 324 (D.Md. 2011) ("The presumption in favor of prejudgment interest, especially in ERISA cases, is widely recognized[.]") *(citing Ehrman v. The Henkel Corp. Long-Term Disability Plan and Prudential Life Insur. Co.*, 194 F.Supp.2d 813, 821 (2002)). The goal, of course, is to put the injured party in the same position as if no violation had occurred. Defendant does not appear to dispute that an award is appropriate in this case, although it disputes the rate.

Without any discussion, Plaintiff seeks the "legal rate" of 6%. Defendant correctly disputes the appropriateness of the state of Maryland rate and argues that it overstates the rate necessary in the relevant time frame to place the plaintiff in the same position she would have been in absent the violation. Instead, it suggests a rate of 3%.

Courts have adopted a number of approaches to calculating prejudgment interest in the ERISA context. In some cases, courts have awarded the Maryland state law prejudgment interest rate of

6% that Plaintiff seemingly alludes to as the "legal rate." *See, e.g.*, *Cross v. Fleet Reserve Ass'n Pension Plan*, No. CIV. WDQ-05-0001, 2007 WL 7022754, at *4 (D.Md. July 3, 2007), *aff'd in part, vacated in part sub nom. Cross v. Bragg*, 329 F. App'x 443 (4th Cir. 2009) ("In this case, prejudgment interest shall be calculated using Maryland's legal rate of prejudgment interest: 6% per year"); *Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 719 (D.Md. 2002) ("The Court also has discretion to award prejudgment interest on that amount, which will be granted at the rate of 6%"). In others, courts have looked to federal statutory law outside for guidance. *See, e.g.*, *Mink v. Baltimore Behavioral Health Inc.*, No. CIV. WDQ-11-1937, 2012 WL 6043796, at *7 (D.Md. Dec. 4, 2012) (adopting "the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 U.S.C § 6621]. § 6621 provides that interest shall be calculated at the Federal short term plus three percent"); *Feldman's Med. Ctr. Pharmacy, Inc.*, 823 F.Supp.2d at 326 ("The Court finds that the Section 1961 [federal post-judgment interest] rate adequately compensates FMCP for loss of the use of its funds and does not amount to a penalty against CareFirst"); *Grooman v. Northwestern Mutual Life Insurance Company*, 200 F.Supp.2d 523, 532 (D.Md. 2002) (awarding section 1961 federal post-judgment interest rate). Others still, including that cited by Defendant, rely on statutory rates as benchmarks only. *See, e.g.*, *Solomon v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No.

CV MJG-14-3570, 2016 WL 3211811, at *2 (D.Md. June 8, 2016) ("the Court shall award prejudgment interest commencing October 2010 as Plaintiff contends but at one-half the Maryland common law rate, 3% per annum, simple interest, calculated monthly"); *Meyer v. Berkshire Life Ins. Co.*, 250 F.Supp.2d 544, 575 (D.Md. 2003), *aff'd*, 372 F.3d 261 (4ᵗʰ Cir. 2004) ("Considering the [Maryland state] 6% baseline, as well as Berkshire's own estimates that a reasonable rate of return for the plans was between 8% and 12% . . . the court finds that pre-judgment interest at the rate of 8% per annum is needed to fully compensate the plans for their losses.")

Based on the foregoing, the court finds that 3% is the appropriate rate of prejudgment interest. It is supported by looking at the rates for treasury bills in the relevant time period, and is the rate suggested by Defendant. The parties will have to determine the precise numbers, by using this figure to compute prejudgment interest due for each of the missed payments. The parties should submit within two weeks of the date of this Memorandum Opinion and Order an accounting of their prejudgment interest calculations – to be calculated at 3% per annum, simple interest, calculated monthly – and the total sum due.

Finally, the parties dispute a potential reduction under a clause of the Policy. Specifically, under the Policy, "Other Income Amounts" are subtracted from the gross benefit; such "Other

10

Income Amounts" include Social Security benefits.  Defendant therefore argues that any award should include a deduction for amounts Ms. Krysztofiak has been or will be paid by the Social Security Administration ("SSA"), based on their "estimated Social Security benefit of $2,347."  (ECF No. 24, at 5-6).  This, Defendant argues, will ensure that Defendant does not overpay Plaintiff.  Because the exact amount of Social Security benefits Ms. Krysztofiak will receive remained up in the air at the time of filing, Defendants argue that it "it makes sense to wait for the Social Security decision before a monetary award is issued by the Court.  Alternatively, Defendant could pay the unreduced amount into the Court but await any potential distribution until the Social Security decision."  *Id.*  Boston Mutual, however, ignores the fact that Plaintiff is contractually obligated "to reimburse any overpayment in full immediately following receipt of award for said benefits."  (ECF No. 27-2 ¶ 3(B)).  Rather than offsetting the award to Ms. Krysztofiak by a speculative amount, or delaying the payout of such an award, the court will award Ms. Krysztofiak the full amount owed.  Ms. Krysztofiak will, however, remain obligated to reimburse Boston Mutual should payment of any future SSA benefits render the award an overpayment.

## III. Attorney's Fees

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

11

29 U.S.C.A. § 1132.  Plaintiff has provided an affidavit in support
of its motion for attorney's fees, (ECF No. 23-1), as well as a
memorandum with a detailed justification of Ms. Krysztofiak's
entitlement to attorney's fees based on the factors laid out in
*Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1029 (4th Cir. 1993),
(ECF No. 23-2).  Defendant does not oppose an award of attorney's
fees; rather, it "limit[s its] opposition to the reasonableness of
the hours claimed."  (ECF No. 25, at 1).  Defendant's argument is
as follows:

> Plaintiff is claiming 18 hours to prepare
> her Motion for Relief.  But as explained in
> Defendant's response to that Motion,
> Plaintiff's requested relief is contrary to
> the Court's December 4, 2019 Order and its
> instructions.  The clear majority of
> Plaintiff's motion/brief is dedicated to these
> improper arguments.  To the extent the Court
> cannot determine the exact number of hours
> related to her improper argument because of
> the vague descriptions provided, it means that
> she has not sustained her burden of proof.  At
> the very least, substantial reductions are
> warranted.
> Finally, Plaintiff is asking for 7 hours
> in connection with the fee petition.  Weeks
> before the Petition was prepared, undersigned
> counsel wrote to counsel for Plaintiff,
> stating, "if you intend to submit a claim for
> fees, please let us know that number (hourly
> rate/number of hours) and we can see if it is
> possible to negotiate that claim."  Mr. Koch
> responded that "as a general rule, I do not
> negotiate the amount of requested attorneys'
> fees."  The requested information was never
> furnished.  If it was, Defendant likely would
> have agreed to the requested fees without the
> need for the petition.  Counsel should not be

> rewarded for refusing to cooperate and
> burdening this Court.

(ECF No. 25, at 1-2).

As to Defendant's first argument, Plaintiff responds with a rehash of her argument that "[t]his Court's Order did not limit benefits owed to benefits accrued during the 'own occupation' period[.]" (ECF No. 26, at 1).  As discussed above, Plaintiff has misinterpreted the court's opinion and order of December 4, 2019, which did in fact limit Plaintiff's award to benefits accrued during the 'own occupation' period – i.e., the first 24 months of Plaintiff's disability period.   Again, that order specifically provided that "Plaintiff is entitled to payment of all long-term disability benefits due within the first 24 months of Plaintiff's disability under the Boston Mutual Life Insurance Co. Long Term Disability policy[.]" (ECF No. 21, at 1).  The same order provided that "Plaintiff is to file her specific and well-supported request for relief, consistent with this Order[.] (*Id.*).

Plaintiff's subsequent request for relief was largely – but not entirely – *inconsistent* with the court's order.  Plaintiff's itemized bill includes 18 hours devoted to the research and drafting of the motion for reconsideration, amount to $6,300 of the $38,080 sought in attorney's fees. (ECF No. 23-2).  The court is sensitive to the fact that Plaintiff's counsel is likely unable to go back and determine how many of these 18 hours were devoted

to arguments which the court deems improper.  Defendant, however, is clearly correct to say that "[t]he clear majority of Plaintiff's motion/brief is dedicated to these improper arguments."  (ECF No. 25, at 2).  The court will reduce fees Plaintiff seeks in connection with her motion, (ECF No. 22), by two-thirds.  This brings the total number of hours to 96.8, and the attorney's fee award to $33,880.

As to Defendant's second argument, regarding hours spent in calculating the fee award, Defendant cites no authority and the court sees no reason to reduce attorney's fees based on the notion that, had Plaintiff's counsel been willing to negotiate over attorney's fees, "Defendant likely would have agreed to the requested fees without the need for the petition[.]"  (ECF No. 25, at 2).  The court will not reduce the award of attorney's fees on this ground.

**IV.  Conclusion**

For the foregoing reasons, Plaintiff's motion for motion for relief consistent with order granting summary judgment, (ECF No. 22), will be granted in part with modifications, and denied in part.  Plaintiff's motion for attorney's fees, (ECF No. 23), will also be granted with modifications.  A separate order will follow.

                              /s/
                              DEBORAH K. CHASANOW
                              United States District Judge