IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANA KRYSZTOFIAK                              :

                                             :

    v.                                       :   Civil Action No.  DKC 19-879

                                             :

BOSTON MUTUAL LIFE INSURANCE
COMPANY                                      :

**MEMORANDUM OPINION**

Pending in this case brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.,* challenging denial of disability benefits, are the motion for summary judgment filed by Plaintiff Dana Krysztofiak, (ECF No. 44), and the cross motion for summary judgment filed by Defendant Boston Mutual Life Insurance Company, (ECF No. 52).  The issues have been briefed.  The court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment filed by Ms. Krysztofiak will be denied and the cross motion for summary judgment filed by Boston Mutual will be granted in part.  Once Plaintiff's counsel situation is resolved, the case will be remanded to the claim administrator.

I.  **Background**

Unless otherwise noted, the following facts are undisputed. This case involves Ms. Krysztofiak's attempts to obtain disability benefit payments from Defendant Boston Mutual.  The facts of this

litigation are recited in more detail in the court's prior opinions. (See ECF Nos. 20; 28; 39). Ms. Krysztofiak suffers from fibromyalgia. She first claimed disability benefits as of December 29, 2016, under a group long term disability insurance policy issued by Defendant Boston Mutual Life Insurance Company to Homecare Maryland, LLC [Policy No. 0054697-00001] ("the Policy"). Boston Mutual initially awarded her disability benefits. After one year, however, the benefits were terminated. She subsequently filed this case.

There are two types of disability benefits at issue. There is no question about the first, benefits under the "regular occupation" definition of disability. The court previously determined Ms. Krysztofiak was entitled to benefits under that definition. (ECF Nos. 20 and 21). Those benefits were available to Ms. Krysztofiak for up to twenty-four months and have now been paid. The second type, benefits under the "any occupation" definition of disability, remain in dispute. Those benefits are potentially available to Ms. Krysztofiak after the initial, "regular occupation" benefits have been exhausted.[1]

---

[1] In their papers, the parties cite to the Policy. Or what they say is the Policy. When reciting the definitions of disability, Plaintiff cites to Administrative Record ("AR") 7140, which is located at ECF No. 50-5, at 213. (ECF No 44-1, at 2 n.2). When citing to the "pre-remand Policy," Plaintiff cites the pre-remand administrative record at AR1508-63, which is located at ECF No. 11-15, at 55-110. (ECF No. 53, at 1-2). The last three pages of that second citation appear to be part of a different document,

In June 2020, the case was remanded to Disability Reinsurance Management Services, Inc. ("DRMS"), Boston Mutual's claim administrator, for a full and fair review to determine whether Ms. Krysztofiak was disabled within the meaning of the "any occupation" definition of disability.  (ECF No. 33, at 2).

DRMS denied Ms. Krysztofiak's application for benefits under the "any occupation" definition of disability on September 26, 2020.  (ECF No. 50-1, at 110-14) (Administrative Record ("AR") 5321-25).  Ms. Krysztofiak appealed the denial, (ECF No. 50-1, at 85) (AR5296).  DRMS, however, never decided the administrative appeal.  After DRMS took longer than it was permitted to decide the appeal, (*see e.g.*, ECF No. 39, at 2-3), Ms. Krysztofiak filed a motion to reopen the case, (ECF No. 34), which was granted, (ECF Nos. 39 and 40).

Ms. Krysztofiak filed a motion for summary judgment, (ECF No. 44), and Boston Mutual filed a cross motion for summary judgment, (ECF No. 52).  The parties respectively opposed each other's

---

but the remainder of the citation appears to be what Plaintiff intended to cite.  Similarly, Defendant cites to AR5406 for the definitions of disability, which is located at ECF No. 50-1, at 195.  (ECF No. 52-1, at 5).  These references are, in part, to provisions of the Certificate of Coverage for Disability Insurance, not the actual Policy.  On remand, the claim administrator must be careful to interpret the terms of the Policy. Should this case once more be subject to judicial review, the parties should be careful to cite to the Policy.

motions and replied in support of their own.  (ECF Nos. 52; 53; 54).

In its cross motion for summary judgment, Boston Mutual asserts that the Policy contains a "Special Conditions Limitation Rider" ("the Rider") which limits disability benefits for fibromyalgia to twenty-four months, which Ms. Krysztofiak has already received.[2]  (ECF No. 52-1, at 4).  As Ms. Krysztofiak explains, this Rider was not present in the Policy when this case was remanded in June 2020.  (ECF No. 53, at 1).  Instead, the Policy was amended in 2020 to add the Rider.  Apparently, the Rider was supposed to have been included in the Policy from the beginning, but was omitted due to an unknown or unexplained mistake.

In August 2018, DRMS realized that the Policy issued to Ms. Krysztofiak's employer was priced to include the twenty-four-month Special Conditions Limitation, but that the Policy did not include that provision.  (ECF No. 50-1, at 228) (AR5439).  It does not appear that any action was taken at that time to remedy the missing

---

[2] This appears to be the first time that Boston Mutual has formally raised the Rider as a ground for denying Ms. Krysztofiak's claim either on administrative or judicial review.  Boston Mutual did reference the Rider and its potential impact on Ms. Krysztofiak's claim in its opposition to Ms. Krysztofiak's motion to reopen, (ECF No. 37, at 4), but it did so as part of its recitation of the communications between DRMS and Ms. Krysztofiak's counsel during the ultimately unresolved administrative appeal.

Special Conditions provision.  Two years later, in August 2020, a senior claims manager for DRMS was reviewing Ms. Krysztofiak's eligibility for continued coverage under the Policy.  The senior claims manager confirmed that there was no Special Conditions provision in the Boston Mutual policy, although there had been such a provision in the "prior carrier's plan."  (ECF No. 50-1, at 314) (AR5525).  The senior claims manager recommended notifying "Plan Services" and asking them to "correct the UW coding to reflect no special conditions limitation."  (*Id.*).

Instead, by the next day, the Plan had apparently been "corrected" to include the Special Conditions provision.  A lead policy administrator for DRMS informed another DRMS employee that Ms. Krysztofiak's employer "was quoted and issued with 24 mo lifetime benefit for the Spec Cond."  (ECF No. 50-1, at 177) (AR5388).  The lead policy administrator attached a copy of the "corrected cert with the benefit included" and an email from a Boston Mutual employee confirming that the employee was having the "cert corrected to include 24 mo Spec Cond."  (*Id.*).

The Special Conditions Limitation Rider states:

> All other provisions under this policy apply to this Rider unless modified in this Rider.
>
> **SPECIAL CONDITIONS WILL HAVE A MAXIMUM PERIOD OF PAYMENT.**
>
> If you are disabled and meet the eligibility requirements of this contract, the lifetime

maximum period of payment for all disabilities due to special conditions is 24 months.

Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:

    1. are not continuous; and/or
    2. are not related.

We will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

    1. If you are confined to a hospital, health facility or institution at the end of the 24 month period, we will continue to send you payment(s) during your confinement.

    If you are still disabled when you are discharged, we will send you payment(s) for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, we will send payment(s) during that additional confinement and for one additional recovery period up to 90 more days.

    2. In addition to item 1, if you continue to be disabled after the 24 month period, and subsequently become confined to a hospital, health facility, or institution for at least 14 days in a row, we will send payment(s) during the length of the reconfinement.

We will not make payments beyond the limited pay period as indicated above, or the maximum period of payment, whichever comes first.

**DEFINITIONS**

. . .

**Special Conditions** means:

. . .

3. Fibromyalgia

(ECF No. 50-1, at 222-23) (AR5433-34)(emphasis in original).

The first page of the pre-remand Policy states "[t]his policy may be changed in whole or in part."  (ECF No. 11-15, at 55) (AR1508 (pre-remand AR)).[3]  The Certificate of Coverage for Disability Insurance similarly states "[i]f the terms and provisions of the certificate of coverage issued to you differ from the policy issued to the Policyholder, the policy will govern. **Your coverage may be canceled or changed in whole or in part under the terms and provisions of the policy.**"  (ECF No. 11-15, at 65) (AR1518) (emphasis added).

DRMS did not reference the Rider in its September 26, 2020, denial of Ms. Krysztofiak's claim for Long Term Disability benefits under the "any occupation" definition of disability.  (ECF No. 50-1, at 110-14) (AR 5321-25).  DRMS did notify Ms. Krysztofiak of the Rider's existence after she initiated her administrative appeal, (ECF No. 37-1, at 6), but it never issued a decision on Ms. Krysztofiak's appeal.

---

[3] The bates numbers are different between the administrative record filed in 2019 and the updated administrative record filed in 2022.

## II.  Remand

Usually merits issues would be resolved before determining whether remand is appropriate.  The unusual procedural nature of this case requires a different approach.  Typically, a court reviews the decision of the defendant or its claim administrator after one of them issues a decision on an administrative appeal.  Here, however, there is no administrative appeal decision for the court to review.  Moreover, Boston Mutual has raised a basis for denying Ms. Krysztofiak's claim which was not a basis for DRMS's denial of Ms. Krysztofiak's claim in 2020.  That basis is the Special Conditions Limitation Rider which, if found applicable to Ms. Krysztofiak's claim, would seem to resolve the parties' dispute.  The court, for the reasons below, will remand this case for a full and fair review of the Special Conditions Limitation Rider.  Before remanding, the court will resolve the **legal** disputes between the parties regarding amendments to an ERISA governed welfare benefits plan.

It is left to the court's discretion whether to remand the case to the plan administrator.  *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 363 (4th Cir. 2008).  Remand, however, "should be used sparingly," *id.* at 362, especially where evidence shows that a plan administrator abused its discretion, *Helton v. AT & T, Inc.*, 709 F.3d 343, 360 (4th Cir. 2013).  Ms. Krysztofiak asserts that another remand would be inappropriate.  (ECF No. 53,

at 10).  She asserts that Boston Mutual is a "serial abuser" which has abused its discretion by denying her claim on remand, failing to comply with ERISA regulatory guidelines applicable to her administrative appeal, and by purporting to "correct" the Plan's omission of the Special Conditions Limitation.  (*Id.* at 10-11).  On the other hand, Boston Mutual concedes that "[i]f the [c]ourt concludes that by not including [the Rider as a] basis for denying the claim Plaintiff did not receive a full and fair review, then remand is appropriate under [*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230 (4th Cir. 2008)]."[4]  (ECF No. 52-1, at 6).

In *Gagliano*, the defendant insurer terminated plaintiff's benefits and gave her notice of her administrative appeal rights.  547 F.3d at 232.  Gagliano filed an administrative appeal, as well as a civil action.  The district court stayed the civil action pending the administrative review.  The defendant-administrator then issued a second denial, denying Gagliano's claim for a different reason—a pre-existing conditions limitation in the policy.  *Id.* at 233.  The second denial purported to be final and did not include notice to the plaintiff that she could administratively appeal the decision.  *Id.*  Ultimately the district

---

[4] Boston Mutual also asserts that it does not believe remand is necessary, because "the evidence overwhelmingly points to fibromyalgia as the basis for Plaintiff's claim."  (*Id.*).  The wiser course of action is to remand for the claim administrator to conduct a full and fair review that includes interpreting the terms of the Policy.

court entered judgment for the plaintiff and ordered the defendant

to pay benefits to the plaintiff.  The Fourth Circuit affirmed in

part and reversed in part.  It explained how the ERISA appeals

process works and why it is important:

> ERISA requires that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial."  29 U.S.C. § 1133 (2008).  The Plan must further "afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim."  *Id.*  The regulations implementing these statutory requirements provide that a "full and fair review" includes the opportunity for the claimant to appeal the adverse benefits determination and to submit written comments or records.  The claimant must also be given reasonable access to documents relevant to her claim, and the resulting review must take into account all relevant information submitted by the claimant.  29 C.F.R. § 2560.503-1(h)(1-2) (2008).
>
> The purpose of the ERISA mandated appeal process is an important one.  That process enables a claimant who is denied benefits to have an impartial administrative review, **but also make an administrative record for a court review if that later occurs**.  *Ellis v. Metro. Life Ins. Co.,* 126 F.3d 228, 236-37 (4th Cir. 1997).  Without this opportunity to make a meaningful administrative record, courts could not properly perform the task of reviewing such claims, a specific function entrusted to the courts by ERISA.  Moreover, plan participants would be denied their statutory rights.  *Id.*  Procedural guidelines are at the foundation of ERISA and "full and fair review must be construed . . . to protect

> a plan participant from arbitrary or
> unprincipled decision-making." *Weaver v.*
> *Phoenix Home Life Mut. Ins. Co.,* 990 F.2d 154,
> 157 (4th Cir.1993) (quoting *Grossmuller v. UAW*
> *Local 813,* 715 F.2d 853, 857 (3d Cir.1983)).

*Gagliano*, 547 F.3d at 235 (emphasis added).  The Fourth Circuit then held that the district court did not err in determining that the insurer failed to comply with the notice requirements of ERISA. *Id.* at 237.  The Fourth Circuit, however, also held that the district court erred by ordering the defendant to pay benefits to the plaintiff.  Because the failure to give notice was a procedural violation of ERISA, the "proper remedy was to remand to the plan administrator for the 'full and fair review' to which Gagliano is entitled regarding the denial of benefits on the basis of the Pre-Existing Conditions Limitation in the Second Termination Letter." *Id.* at 241.

In this case, Boston Mutual has similarly failed to comply with ERISA procedure by seeking to prevail on a basis which has never been subjected to a full and fair review.  Perhaps DRMS intended to rely on the Rider in its administrative appeal decision, as suggested by the fact that it made Ms. Krysztofiak's attorney aware of the Rider's existence during the administrative appeal.  This can only be speculated about because DRMS never issued such a decision.  Moreover, changing the basis for denial may have resulted in the same procedural violation as in *Gagliano*, necessitating another administrative appeal.  In any event, DRMS

never issued a decision interpreting whether the Policy permitted amendment, vested Ms. Krysztofiak's interest in the disability benefits, or whether the Rider was applicable to her claim. Because of that, the court exercises its discretion and determines that remand is appropriate here.[5] *Cf. Smith v. Continental Cas. Co.*, 369 F.3d 412, 421 (4th Cir. 2004) (holding that defendant apparently ignored provision of plan that entitled plaintiff to some benefits and stating that "[i]f the district court concludes that Continental Casualty failed to consider this Plan language, it can remand the case to Continental Casualty for further administrative review.").

## III. Analysis

The parties present two disputes: (1) can Ms. Krysztofiak's claim be denied because the Special Conditions Limitation Rider terminates her eligibility for further disability benefits; and (2) whether the denial of Ms. Krysztofiak's claim for disability benefits under the "any occupation" definition of disability was reasonable.  Only the first dispute is addressed at this time.

The first dispute raises several sub-questions.  Whether ERISA governed welfare benefits plans may be amended, and what

---

[5] Ms. Krysztofiak's frustration is understandable, but as explained below, she is incorrect as a matter of law on the issue of an interest in disability benefits vesting.  Given that, it is most appropriate to remand for the claim administrator to conduct a full and fair review of the Policy and to determine if a provision of the Policy vested her interest in disability benefits.

limitations as a matter of law are on that power to amend, are
questions of law.   Other questions raised by the parties'
arguments, such as whether (1) the Policy in this case gave Boston
Mutual the power to amend the Policy in the way that it did; (2)
Boston Mutual did amend the policy permissibly; (3) a provision of
the Policy vested Ms. Krysztofiak's interest in the disability
benefits; and (4) the sole basis of Ms. Krysztofiak's claim is
fibromyalgia, are all questions of either interpreting the Policy
or fact, which should be answered initially by the claim
administrator.   As explained below, an ERISA governed policy may
be amended.   The initial resolution of the remaining questions
relating to the Rider will be for the claim administrator on
remand.

Regarding the questions of law, Boston Mutual asserts that it
has the power to amend the Policy to add the Rider, pursuant to
the terms of the Policy, and that it may rely on the Rider to deny
Ms. Krysztofiak's claim.   Ms. Krysztofiak argues that her interest
in the disability benefits vested when she became disabled as of
December 29, 2016, and thus a subsequent amendment to the Policy
cannot be relied upon to deny her claim.   (ECF No. 53, at 3).   Ms.
Krysztofiak has not contradicted Boston Mutual's reading of the
Rider, nor identified language in the Policy that would vest her
rights to the disability benefits.   Instead, she argues that (1)
her right to disability benefits vested on the date of her

13

disability; (2) Boston Mutual is trying to reform the contract equitably, but that it cannot do so; and (3) the "plan document rule" requires the Plan to be "enforce[d] in accordance with the terms then in existence when she became disabled." (ECF No. 53, at 3-5).

## A. Amending Welfare Benefits Policies and the Vesting of Interests in Welfare Benefits

The answer to the threshold question of whether a welfare benefits policy may be amended is yes, although there are some restrictions. "Indeed, a welfare benefit may be terminated at any time so long as the termination is consistent with the terms of the plan." *Price v. Bd. of Trustees of Indiana Laborer's Pension Fund*, 707 F.3d 647, 651 (6th Cir. 2013) (citations omitted).

The Supreme Court of the United States has explained:

> Although ERISA imposes elaborate minimum funding and vesting standards for pension plans, §§ 1053, 1082, 1083, 1084, it explicitly exempts welfare benefits plans from those rules, §§ 1051(1), 1081(a)(1). **Welfare benefits plans must be "established and maintained pursuant to a written instrument," § 1102(a)(1), but "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans,"** *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). As we have previously recognized: "[E]mployers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). And, we have observed, the rule that contractual "provisions ordinarily should be enforced as

> written is especially appropriate when
> enforcing an ERISA [welfare benefits] plan."
> *Heimeshoff v. Hartford Life & Accident Ins.
> Co.*, 571 U.S. 99, 108, 134 S.Ct. 604, 611–612,
> 187 L.Ed.2d 529 (2013). That is because the
> "focus on the written terms of the plan is the
> linchpin of a system that is not so complex
> that administrative costs, or litigation
> expenses, unduly discourage employers from
> offering [welfare benefits] plans in the first
> place." *Ibid*. (internal quotation marks,
> brackets, and citation omitted).

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434–35 (2015)

(emphasis added).

Welfare benefits may not be amended, however, if the interest in the welfare benefits has vested. *See Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 640 (4th Cir. 2007) (abrogated on other grounds) ("An employer sponsoring the plan may therefore unilaterally terminate or modify previously offered benefits that are not vested.") (cleaned up).

Because welfare benefits under ERISA governed plans do not automatically vest, an employee's right to welfare benefits must vest in at least one of two other ways. First, "the terms of a plan may create vested rights in welfare benefits even though the employer is under no obligation to do so." *Blackshear*, 509 F.3d at 640. "Once an employer or plan sponsor grants vested rights under a welfare benefit plan, however, it may not retroactively amend the plan to deprive a beneficiary of a vested benefit. *See Wheeler,* 62 F.3d at 638, 640." *Id.* Ms. Krysztofiak did not

assert that a term of the Policy vested her interest in the disability benefits. Nonetheless, the question of whether such a term exists is first a question for the claim administrator, to whom the Policy gives the discretion to interpret Policy provisions.

Second, for certain types of welfare benefits, the occurrence of a "triggering event" will vest an employee's right to the welfare benefits. In *Blackshear*, the Fourth Circuit recognized two types of welfare benefits for which rights vest as the result of a triggering event: medical insurance benefits and life insurance benefits. Medical insurance benefits vest at the time that the "covered loss occurs." *Id.* at 641 (citing *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995)). Life insurance benefits vest at the moment the insured dies. *Id.* *Blackshear* does not address disability benefits.

Ms. Krysztofiak argues that disability benefits should be treated like medical insurance and life insurance benefits, and vest upon the occurrence of a disability. (ECF No. 53, at 3-4). She argues that "[u]nder general principles of insurance contract law, when a covered loss occurs, the contract is no longer executory and must be performed in accordance with the terms *then in existence*." (*Id.* at 3) (emphasis in original) (citing *Blackshear*, 509 F.3d at 641). She concludes from that proposition that her right to disability benefits vested when she became

disabled as of December 29, 2016.  (*Id.* at 4).  *Blackshear*, however, does not address whether rights to disability benefits vest upon an insured becoming disabled.  As other courts have recognized, those two types of welfare benefits are different from disability benefits.  In *Dejoe v. Unum Life Insurance Company of America*, the court rejected the plaintiff's citation to *Blackshear*:

> That is the initial critical distinction between these cases and the one at hand.  An insured life can only end once; the event giving rise to a specific benefit occurs only once.  While the condition of death continues, the entitlement to benefits under the life insurance policy does not.  A single payment becomes due at the time of death.  To use the plaintiff's words, that is when the insurer's performance "became due."  *See Members Servs.*, 130 F.3d at 957.  Similarly, the medical expenses for which payment is due occur once and do not continue indefinitely.
>
> By contrast, a disabled individual could recover sufficiently to return to work.  The disability policy entitles a beneficiary to periodic payments that, by its terms, may be adjusted at various times.

No. 07-109-P-S, 2008 WL 2945576 at *7 (D.Me. July 28, 2008) *report and recommendation adopted by* No. 2008 WL 3929581 (D.Me. Aug. 27, 2008).

The Sixth Circuit reached the same conclusion when resolving a petition for rehearing in *Price v. Bd. of Trustees of Indiana Laborer's Pension Fund*, 531 Fed.Appx. 535 (6th Cir. 2013).  In its prior opinion, the Sixth Circuit had held that, under abuse of

discretion review, it was reasonable for the defendant to interpret a plan to permit an amendment which had the effect of terminating disability benefits. *Price*, 707 F.3d at 651-52. The policy had permitted amendments, but also prohibited amendments that had the effect of reducing benefits for plan participants whose rights had vested under the provisions of the plan. *Id.* at 651. In his petition for rehearing, plaintiff argued that the Sixth Circuit had created a circuit split regarding the vesting of welfare benefits and cited, among other cases, *Blackshear*. *Price*, 531 Fed.Appx. at 535. The Sixth Circuit rejected this argument, saying "[t]hese cases have two things in common: We do not disagree with any of them, and they do not help resolve this distinct dispute." *Id.* at 535.

The Fourth Circuit does not appear to have addressed the vesting of disability benefits upon a triggering event theory. It has, however, recognized that differences in types of injuries and benefits can affect whether an interest in benefits vests. In *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634 (4th Cir. 1995), the plaintiff sought a declaratory judgment that she was entitled to coverage for breast cancer. The plaintiff was diagnosed with breast cancer, chose a multi-step treatment procedure, and completed the first step. *Id.* at 637. Around the same time, the plaintiff's employer adopted a new health care plan. The old plan covered plaintiff's course of treatment, the new plan did not.

18

*Id.*  The Fourth Circuit concluded that the plaintiff's coverage for the procedure and its expenses vested under the old plan because she had incurred the expenses for the treatment and began it while the old plan was still effective.  *Id.* at 640.  In reaching that conclusion, the Fourth Circuit distinguished cases cited by the defendant involving claims by plaintiffs diagnosed with AIDS. In those cases, the defendant-insurers had amended their health plans to eliminate coverage for AIDS-related claims.  *Id.*  The Fourth Circuit explained:

> Essentially, the employees argued that the right to benefits for any potential future treatment for AIDS they might undergo throughout their lifetimes vested at the moment they were diagnosed with the disease. In contrast, Wheeler seeks coverage for a particular medical procedure whose scope is relatively short and well defined.  We believe a meaningful distinction may be made between [Wheeler's breast cancer treatment], a specific procedure terminating after several months, and treatment for AIDS, which continues throughout an employee's lifetime and may well involve a variety of unforeseeable future procedures. *See Butler*, 617 F.Supp. at 729 (noting that comparison of the long-term disease, diabetes, to a nine-month pregnancy for coverage purposes would be "a comparison of apples and oranges").

*Id.*  *Wheeler*, *Dejoe*, and cases like them draw their distinctions based on the differences between injuries and benefits of an indeterminate nature and duration and injuries and benefits of a determinate nature and duration.

Disability benefits are not the same as medical insurance benefits or life insurance benefits.  Disability benefits are not contingent upon a singular event, but upon the continued existence of a disability.  If a claimant fortunately recovers from his or her disability, then the claimant is no longer eligible for disability benefits.  Thus, as a matter of law, an interest in disability benefits does not vest upon the occurrence of a disability.[6]

---

[6] This opinion should not be read to address whether an interest in disability benefits vests after an insurer begins paying out the benefits to an insured.  Boston Mutual has never awarded Ms. Krysztofiak disability benefits under the "any occupation" definition of disability.  Nor is Boston Mutual seeking to claw back benefits already paid.  Other courts have addressed that issue, such as the Sixth Circuit in *Price*, where it held that a policy could be amended to terminate disability benefits which had been paid out for over a decade.  Judge Jonker, dissenting in *Price*, articulated the danger of such an outcome:

> If a plan may unilaterally terminate already-awarded benefits while the participant remains disabled, the plan provides no meaningful protection.  Everyone agrees that death benefits already awarded cannot be undone in this fashion under the Plan.  The same logic should apply to disability benefits under the same Plan.  There is no functional distinction between a disability benefit package payable under the Plan terms in effect at the time of disability, and a death benefit package, whether paid out in a lump sum or over a fixed period of time under the same Plan.  In both cases, once the person is actually dead or disabled, there is no way to cover the risk through the purchase of alternative coverage.  This leaves the participant without the promised plan benefit and without the ability to cover the risk in some other way.

20

### B. Ms. Krysztofiak's Alternative Arguments

Ms. Krysztofiak's other arguments regarding the doctrine of equitable reformation and the plan documents rule are not resolved at this time because they are not related to the legal questions resolved above.

### C. Plaintiff's Counsel

The court learned recently that Plaintiff's Counsel, James Koch, unfortunately passed away suddenly on September 6, 2022. In order to give Plaintiff time to resolve whether she wishes to secure new counsel or represent herself, the court will defer entering an order remanding this case for a brief period. Once she notifies the court as to her plans, a telephone conference will be convened to discuss the proper scope of the remand. Plaintiff is requested to provide a status report within 30 days.

## IV. Conclusion

For the foregoing reasons, Ms. Krysztofiak's motion for summary judgment is denied and Boston Mutual's motion for summary judgment is granted in part. A separate order will follow in due course.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

*Price*, 707 F.3d at 653 (Jonker, J., dissenting). That scenario, however, is not present here.