```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

|                              |   |                              |
|------------------------------|---|------------------------------|
| DANA KRYSZTOFIAK             | : |                              |
|                              | : |                              |
| v.                           | : | Civil Action No. DKC 19-0879 |
|                              | : |                              |
| BOSTON MUTUAL LIFE INSURANCE CO. | : |                          |
|                              | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this long running dispute over disability coverage pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, are the motion for summary judgment filed by Boston Mutual Life Insurance Company ("Boston Mutual" or Defendant") (ECF No. 87), and the cross motion for summary judgment filed by Dana Krysztofiak ("Plaintiff"). (ECF No. 88). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Boston Mutual's motion for summary judgment will be granted, and Ms. Krysztofiak's cross motion for summary judgment will be denied.

**I.   Background[1]**

The parties have been litigating Plaintiff's disability benefits for several years. Plaintiff suffers from, among other

---

[1] Unless otherwise noted, the following facts are undisputed.

things, fibromyalgia.  (ECF No. 1 ¶ 6).  Plaintiff brought suit to collect disability benefits under a group long-term disability insurance policy issued by Defendant Boston Mutual Life Insurance Company to Homecare Maryland, LLC ("HCMD") (the "Policy").  (*Id.* ¶¶ 4, 12).  Although Plaintiff suffers from several ailments, her claim was based on fibromyalgia.  (*Id.* ¶ 6).  There were two types of disability benefits at issue:  initial benefits under the "regular occupation" definition of disability, and long-term benefits under the "any occupation" definition of disability.  (*Id.*; ECF No. 22).

This court previously determined that Plaintiff was eligible for twenty-four months of disability benefits under the Policy's "regular occupation" definition of disability.  (ECF No. 20).  Defendant paid the twenty-four months of benefits, and the long-term benefits under the "any occupation" definition remained in dispute.  (ECF No. 22).

Plaintiff filed a motion for relief, asking this court to find that Plaintiff was disabled under the Policy's "any occupation" definition and to award her long-term disability rights.  (ECF. No. 22).  Finding that it could not make a determination on the current record, this court remanded the claim to Boston Mutual for a full and fair review to determine if Plaintiff was disabled under the "any occupation" definition and

2

thus entitled to benefits beyond the twenty-four month period. (ECF No. 28).

On remand, Disability Reinsurance Management Services ("DRMS"), Boston Mutual's claims administrator, reviewed Plaintiff's disability claim. (ECF No. 50-1, at 110-14). In reviewing Plaintiff's claim, DRMS found that Plaintiff's policy had a special conditions limitation rider (the "Rider") that limited disability benefits to twenty-four months for certain disabilities, including fibromyalgia. (ECF No. 50-1, at 222-223). The Rider states:

> All other provisions under this policy apply to this Rider unless modified in this Rider.
>
> **SPECIAL CONDITIONS WILL HAVE A MAXIMUM PERIOD OF PAYMENT.**
>
> If you are disabled and meet the eligibility requirements of this contract, the lifetime maximum period of payment for all disabilities due to special conditions is 24 months.
>
> Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:
>
>> 1. are not continuous; and/or
>> 2. are not related.
>
> We will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:
>
>> 1. If you are confined to a hospital, health facility or institution at the end of the 24 month period, we will continue to send you payment(s) during your confinement.

3

> If you are still disabled when you are discharged, we will send you payment(s) for a recovery period of up to 90 days.
>
> If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, we will send payment(s) during that additional confinement and for one additional recovery period up to 90 more days.
>
> 2. In addition to item 1, if you continue to be disabled after the 24 month period, and subsequently become confined to a hospital, health facility, or institution for at least 14 days in a row, we will send payment(s) during the length of the reconfinement.
>
> We will not make payments beyond the limited pay period as indicated above, or the maximum period of payment, whichever comes first.
>
> **DEFINITIONS**
>
> . . .
>
> **Special Conditions** means:
>
> > . . .
> >
> > 3. Fibromyalgia

(ECF No. 50-1, at 222-23). At the time, the parties and this court believed that the Rider amended the original plan, and the question was whether the amended plan could be applied to Plaintiff, preventing her from receiving long-term benefits. (ECF Nos. 55, 72).

4

Ultimately, DRMS found that Plaintiff did not meet the "any occupation" definition of disability, and it denied Plaintiff's application for long-term disability benefits. (ECF No. 50-1, at 110-14). Plaintiff appealed the denial, (ECF No. 50-1, at 85-87) and when DRMS exceeded the permissible time to decide the appeal, Plaintiff filed a motion to reopen the case. (ECF No. 34).

In 2021, this court granted Plaintiff's motion to reopen the case. (ECF No. 40). In 2022, this court once again remanded the claim back to DRMS, this time to determine whether the Rider could be applied to Plaintiff, therefore precluding Plaintiff from receiving long-term disability benefits. (ECF Nos. 55, 56). On remand, DRMS found that the Rider applies to Plaintiff, and therefore, under the plain language of the plan, she is not entitled to long-term disability benefits. (ECF No. 86, at 5, 8-11)(REM2AR-004, REM2AR-007-010).

Further, Defendant now asserted that the Rider had been part of the Policy from the beginning. (*Id.* at 37-38, 91-93) (REM2AR-036-37, REM2AR-090-092). Mr. Joseph W. Sullivan, Executive Vice President, Chief Risk Officer of Boston Mutual, wrote in a sworn affidavit:

> The Special Conditions Limitation Rider [Rider] pages have been included in the Boston Mutual Policy delivered to HomeCare since its effective date on December 1, 2016. The Boston Mutual Policy insuring HomeCare was never amended to add the Special Conditions Limitation Rider as those pages were always included in the Policy.

5

(ECF No. 86, at 93) (REM2AR-092). Additionally, Mr. Joseph Binder, Executive Director of HCMD at the time the Policy was issued, wrote in a sworn affidavit that HCMD located a copy of the Policy with an effective date of December 1, 2016, and the copy included the Rider. (*Id.* at 38) (REM2AR-037).

Defendant denied Plaintiff's appeal of the finding that she is not eligible for additional benefits. (*Id.* at 8-11)(REM2AR-007-010). In response, Plaintiff filed a motion to reopen the case, and this court granted the motion. (ECF Nos. 82, 84). On October 4, 2023, Defendant filed a motion for summary judgment, arguing that Plaintiff has not satisfied her burden of proof and that Plaintiff's claim is barred by the Rider. (ECF No. 87). On October 27, 2023, Plaintiff filed a cross motion for summary judgment and opposition to Defendant's motion for summary judgment, arguing that this court should not allow the record to be supplemented with the Rider at this late stage, and that Plaintiff is disabled under the "any occupation" definition and should be awarded benefits accordingly. (ECF No. 88).

On November 6, 2023, Defendant filed a corrected reply in response to Plaintiff's cross motion and opposition, (ECF No. 90), and on November 27, 2023, Plaintiff filed a reply to Defendant's response. (ECF No. 91). Additionally, on April 18, 2024, Plaintiff filed a supplement to her cross motion for summary

judgment and opposition to Defendant's motion, (ECF No. 94), and on April 22, 2024, Defendant filed a response to Plaintiff's supplement. (ECF No. 95).

## II. Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

When faced with cross motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotations omitted). In doing so, it must "take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party

7

opposing that motion." *Id.* (internal citation and quotations omitted).

Plaintiff and Defendants attach several exhibits to their motions. Apart from Defendant's affidavits of Mr. Jonathan Binder and Mr. Joseph W. Sullivan (ECF No. 86, at 37-38, 91-93) (REM2AR-036-37, REM2AR-090-092), the parties do not include a declaration or affidavit authenticating their exhibits. The court may still consider the exhibits, however, because "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, No. 21-cv-1818-DKC, 2024 WL 895122, at *8 (D.Md. Mar. 1, 2024) (quoting *Wake v. Nat'l R.R. Passenger, Corp.*, No. 12-cv-1510-PWG, 2013 WL 5423978, at *1 (D.Md. Sept. 26, 2013)), *reconsideration denied*, No. 21-cv-1818-DKC, 2024 WL 1513522 (D.Md. Apr. 8, 2024).

The parties would be able to provide admissible versions of their documents at trial. The authors of the letters between DRMS and Plaintiff's counsel (ECF Nos. 50-1, at 85-87, 110-14; 86, at 8-11 (REM2AR-007-010)) would be able to authenticate the documents by testifying as to their personal knowledge of writing the letters. Fed.R.Evid. 901(b)(1). The Certificate of Coverage for Disability Insurance (ECF No. 50-1, at 222-23) and latest Notification and Resolution of Appeal (ECF No. 86, at 5) (REM2AR-

004) could "be admissible if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business." *Nordman*, 2024 WL 895122, at *9 (quoting *Jones v. W. Tidewater Reg'l Jail*, 187 F.Supp.3d 648, 654 (E.D.Va. 2016)).

### III. Analysis

#### A. ERISA Framework

When reviewing a plan administrator's decision to deny benefits in an ERISA action, the court must first determine whether the plan gives the administrator discretionary authority to interpret plan provisions.  *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 340-41 (4th Cir. 2000); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  If the plan does not give discretionary authority, the court reviews the claim *de novo*. *Booth,* 201 F.3d at 341; *Firestone,* 489 U.S. at 112-13.

If the plan's terms confer discretion on the administrator, the court reviews the administrator's decision for abuse of discretion.  *Booth,* 201 F.3d at 341; *Firestone,* 489 U.S. at 111. Under that standard, the reviewing court will set aside the administrator's decision only if it is not reasonable. *See Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004). "The administrator's decision is reasonable 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  *DuPerry v. Life Ins. Co. of*

*North Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)).

Here, this court previously found that the Policy conferred discretion on Boston Mutual to interpret plan provisions, so this court applied the abuse of discretion standard.  (ECF No. 20).  However, in Plaintiff's current cross motion for summary judgment, she cites to her prior motion for summary judgment (ECF No. 44, at 8-9), and argues that the court should review the initial denial of benefits *de novo*.  (ECF No. 88).  Plaintiff maintains that although it is undisputed that the Policy confers discretion on Defendant, when a plan administrator fails to act or exercise its discretion, the court applies the *de novo* standard of review.  (ECF No. 44, at 8-9).  Therefore, because Defendant failed to decide Plaintiff's appeal of her initial denial of benefits, this court should review the initial denial of benefits *de novo* and find that the denial of benefits was unreasonable.  (*Id.*)

 As discussed below, because the Rider applies to Plaintiff, Plaintiff is not entitled to long-term benefits.  Therefore, even under *de novo* review, Defendant's denial of benefits was not unreasonable because Defendant cannot be required to provide benefits that are plainly excluded from the Policy's coverage.

10

**B. Defendant's Motion for Summary Judgment**

**1. The Policy Includes the Rider**

As set out above, initially, both parties and this court believed that the Policy did not include the Rider from the beginning; rather, they thought it was amended later to include it. (ECF No. 55, at 4-5). This court previously found that an ERISA governed welfare benefits policy can be amended, as long as the benefits did not vest. (*Id.* at 14-15). This court determined that unlike medical insurance and life insurance, disability benefits do not vest at the time an individual becomes disabled. (*Id.* at 20). Therefore, a welfare benefits plan can be amended, and this court remanded the claim to DRMS to determine if the Policy gave Defendant the power to amend the Policy with the Rider, and if Defendant amended the Policy permissibly. (*Id.* at 13).

On remand, DRMS found that the Rider had been part of the Policy from the beginning. (ECF No. 86, at 37-38, 91-93) (REM2AR-036-37, REM2AR-090-092). In its motion for summary judgment, Defendant attaches sworn affidavits from Mr. Sullivan, Executive Vice President, Chief Risk Officer of Boston Mutual and Mr. Binder, Executive Director of HCMD at the time the Policy was issued, both stating that the original Policy included the Rider. (ECF No. 86, at 38, 93) (REM2AR-037, REM2AR-092). Defendant asserts that Plaintiff has failed to produce any evidence to refute that the

11

Rider has been part of the Policy from the beginning.  (ECF No. 87).

In her cross motion for summary judgment, Plaintiff does not provide facts to dispute that the Rider was always part of the Policy.  (ECF No. 88).  Rather, Plaintiff maintains that she has no "real way to address" the assertion, and argues that Defendant's affidavits are not enough to show conclusively that the Rider was part of the Policy from the beginning.  (*Id.* at 5).  Instead, Plaintiff argues that even if the Rider was part of the Policy from the beginning, it is unfair to apply the Rider at this late point in the litigation.  (*Id.* at 5-6).  As discussed below, this court previously decided this issue in the prior remand order and denial of reconsideration.  (ECF Nos. 55, 72).

### 2. Plaintiff's Claim for Long-term Benefits is Barred by the Rider

In its motion for summary judgment, Defendant argues that under ERISA, courts must apply the plain language of the plan. (ECF No. 87, at 7).  Unless a claimant can prove "actual harm," a court cannot apply equitable relief and ignore the plain language of the plan.  (*Id.*).  Defendant argues that Plaintiff has not proven actual harm because the reality of Plaintiff's medical diagnosis would not have changed based on the plan, and Plaintiff has not shown that she was unaware of the Rider before she filed suit.  (*Id.*).  Defendant also reiterates that this court applied

United States Court of Appeals for the Fourth Circuit precedent in *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230 (4th Cir. 2008), by remanding the claim to determine if the Rider applied. (ECF No. 87, at 7-8).

Next, Defendant argues that the written language of the Policy unequivocally excludes long-term benefits for fibromyalgia. (*Id.* at 9). Defendant details Plaintiff's claims from filings throughout this litigation that specify that her disability is due to fibromyalgia. (*Id.* at 9-10). Therefore, because Plaintiff's disability claim is because of fibromyalgia, Plaintiff is barred from receiving long-term disability benefits. (*Id.* at 12).

In her cross motion for summary judgment, Plaintiff argues that Defendant should not be allowed to include the Rider because a plan fiduciary cannot assert a new basis to deny benefits for the first time in court. (ECF No. 88, at 5). Plaintiff contends that because ERISA beneficiaries are entitled to a "full" and "fair" process under the ERISA statute, Plaintiff is entitled to have all the information needed during the claims process. (*Id.*). Therefore, because Defendant did not rely on the Rider from the beginning, this court should decide the case based on the record from the initial proceedings. (*Id.*).

Further, Plaintiff contends that the second remand was unfair and unnecessary. (*Id.* at 9). Plaintiff again attempts to distinguish *Gagliano* by arguing that in *Gagliano*, as opposed to in

13

Plaintiff's case, there had not been a prior remand, the claim administrator had not failed to decide the claimant's claim, there was no dispute that the plan included a pre-existing condition limitation, and the procedural violation was more minor than Boston Mutual's failure to decide Plaintiff's appeal. (*Id.* at 11). Additionally, while Plaintiff concedes that she has relied on her fibromyalgia diagnosis as the basis for her disability, she argues that unlike the plaintiff in *Gagliano*, Plaintiff suffered a great harm because she believed that claiming disability solely based on fibromyalgia would be sufficient. (*Id.*)

As this court has twice explained, *Gagliano* controls here, and remand was appropriate. (*See* ECF Nos. 55, 72). In its memorandum opinion remanding the claim back to DRMS, this court wrote that it is in "the court's discretion whether to remand the case to the plan administrator." (ECF No. 55, at 8). Additionally, despite Plaintiff's arguments to the contrary, this court explained in its prior opinions that *Gagliano* is analogous to Plaintiff's case. (ECF No. 72, at 4).

In *Gagliano,* the Fourth Circuit reviewed the district court's decision to order a defendant insurer to award the plaintiff benefits. *Gagliano*, 547 F.3d at 237-38. As set out in this court's prior opinion:

> The Fourth Circuit firmly rejected the district court's reasoning for two main reasons: First, if the exclusion based on pre-existing conditions applied to

14

> the plaintiff, she was "not entitled to receive benefits," and "ERISA requires the Plan be administered as written[—]to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA." [*Gagliano*, 547 F.3d] at 239 (citing 29 U.S.C. § 1102(a)(1)). Therefore, the court concluded, "the district court was without authority to direct the plan administrator to administer the Plan contrary to its terms by injecting the prohibited concepts of waiver and estoppel." *Id.*
> Second, the Fourth Circuit explained that "[i]n cases where there is a procedural ERISA violation, ... the appropriate remedy is to remand the matter to the plan administrator so that a 'full and fair review' can be accomplished." *Id.* at 240.

(ECF No. 72, at 5-6). Therefore, this court followed Fourth Circuit precedent when it remanded the case to determine if the Rider applies.

Additionally, this court stated in the remand order that if the Rider was found to be applicable, Plaintiff would be barred from collecting long-term benefits. (ECF No. 55, at 8) ("That basis [for Defendant to deny Plaintiff's claim] is the Special Conditions Limitation Rider which, if found applicable to [Plaintiff's] claim, would seem to resolve the parties' dispute."). At that time, the parties and this court believed that the Rider amended the Policy, and the question was whether the Policy could be amended to apply the Rider to Plaintiff. (ECF Nos. 55, 72). This court previously found that disability benefits do not vest at the occurrence of a disability. (ECF No. 55, at 20). Therefore, because there is no vested right, ERISA does not

require Defendant to remain consistent in the basis it asserts for denial of benefits.

As in her previous motions, Plaintiff is once again asking this court to rely on fairness and award her long-term benefits, even though they are plainly precluded by the Rider. (ECF No. 88, at 9.) As this court has previously determined based on *Gagliano*, "ERISA does not allow for such an outcome." (ECF No. 72, at 6). Although the Rider's bar on long-term benefits has caused Plaintiff frustration and prolonged litigation, Defendant cannot be required to provide benefits that Plaintiff was never entitled to in the first place.

Plaintiff filed a supplemental filing citing *Wonsang v. Reliance Standard Life Ins. Co.*, No. 1:23-CV-1, 2024 WL 1559292 (E.D.Va. Apr. 10, 2024), to support her motion; however, *Wonsang* does not support a different result. (ECF No. 94). In *Wonsang*, an insurance beneficiary sued her insurance company to collect benefits under a total disability standard. *Id.* at *5. Instead of remanding the case as the defendant requested, the court stated that it was exercising discretion to grant benefits outright. *Id.* at *13 (citing *Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 860 (4th Cir. 2022)). In *Wonsang*, the defendant relied on the insurance plan's specific limitation as a reason to deny benefits for the first time in district court. *Id.*

16

In contrast, in this case, Defendant mentioned the Rider for the first time while the case was back on the first remand to determine entitlement to benefits beyond the initial twenty-four months of coverage. At that time, the parties thought the Rider was added by amendment in 2020, and there had not been any final decision by the claims administrator. Indeed, Plaintiff was again before the court because the claims administrator had not made a decision in a timely fashion. Even if the court in *Wonsang* had discretion to rule as it did, this court's decision to remand was made in a different context than *Wonsang*.

Considering the facts in the light most favorable to Plaintiff, a reasonable fact-finder could not determine that Plaintiff is entitled to long-term benefits under the Policy. Accordingly, Defendants' motion for summary judgment will be granted.

### C. Plaintiff's Cross Motion for Summary Judgment

Based on the foregoing discussion granting Defendant's motion for summary judgment, it follows that Plaintiff's cross motion for summary judgment must be denied. Plaintiff has not shown that she is entitled to judgment as a matter of law.

17

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's cross motion for summary judgment will be denied.  A separate order will follow.

                                    /s/
                          DEBORAH K. CHASANOW
                          United States District Judge